# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALOUR YOUNAN, CHAD HESSENFLOW, NANCY RUTH BELL and VICKI HESSENFLOW,<br><br>            Plaintiffs,<br>    vs.<br>ROLLS-ROYCE CORPORATION, a wholly owned subsidiary of Rolls Royce, PLC; and MD HELICOPTERS, INC. (MDHI), a foreign corporation,<br><br>            Defendants. | CASE NO. 09cv2136-WQH-BGS<br><br>ORDER |

HAYES, Judge:

The matter before the Court is the Motion for Summary Judgment filed by Defendant MD Helicopters, Inc. (ECF No. 76).

## BACKGROUND

**A.    Procedural Background**

On September 29, 2009, Plaintiffs initiated this action by filing a Complaint against Rolls Royce Corporation ("Rolls Royce"), regarding a 2009 helicopter accident in San Clemente, California. (ECF No. 1). On November 17, 2010, Plaintiffs filed a Second Amended Complaint ("Complaint") against Rolls Royce, MD Helicopters, Inc. ("MDHI"), and the Boeing Company ("Boeing"). (ECF No. 33). In the Complaint, Plaintiffs allege two causes of action against Defendant MDHI; they are the fourth and fifth causes of action in the Complaint. The fourth cause of action alleges "negligence, negligence per se, and failure to

warn." (ECF No. 33 at 11). Plaintiffs allege that, as successive manufacturer of the accident helicopter and holder of the accident helicopter's Type Certificate, MDHI was responsible for the safe operation and continued airworthiness of the helicopter, including informing owners, operators, and the Federal Aviation Administration ("FAA") of any design defects and performance capabilities of the helicopter. The fifth cause of action alleges strict liability for design and manufacturing defects of the accident helicopter and its components. Plaintiffs allege that the accident helicopter had defective engine components and autorotation characteristics.

On October 27, 2011, Defendant Boeing notified the Court of its settlement with Plaintiffs. (ECF No. 63). On November 30, 2011, the Court approved the settlement between Plaintiffs and Boeing. (ECF No. 69). On December 13, 2011, all claims against Defendant Boeing were dismissed with prejudice. (ECF No. 77).

On December 6, 2011, MDHI filed a motion for summary judgment. (ECF No. 76). On January 20, 2012, Plaintiffs filed an opposition. (ECF No. 81). On January 27, 2012, MDHI filed a reply. (ECF No. 82). On February 3, 2012, the Court heard oral argument on the motion for summary judgment. (ECF No. 83).

On February 7, 2012, Plaintiffs filed responsive briefing to MDHI's reply papers. (ECF No. 84). On February 8, 2012, Plaintiffs filed additional evidence in support of their opposition. (ECF No. 85). On February 15, 2012, MDHI filed a reply to the responsive briefing and an opposition to the additional evidence submitted by Plaintiff. (ECF Nos. 88, 89). On February 20, 2012, Plaintiff filed a reply in support of their additional evidence. (ECF No. 91). On February 24, 2012, Plaintiff filed a reply in support of their responsive briefing. (ECF No. 93). On April 25, 2012, MDHI filed a reply to the additional evidence and the responsive briefing. (ECF Nos. 123, 124).

**B.     Undisputed Material Facts**

The MD600N model helicopter was designed and manufactured by McDonnell Douglas Helicopter Systems ("MDHS") in 1994 and certified by the FAA in 1997. The MD600N model helicopter included an engine designed and manufactured by Rolls Royce. Upon

certification in 1994, the FAA approved the MD600N for handling quality and autorotation performance at a maximum weight of 3,650 pounds at 7,000 feet density altitude and 4,100 pounds at 1,700 feet density altitude. In 1998, the FAA increased the approved limits for MD600N handling quality and autorotation performance to a maximum weight of 3,850 pounds at 7,000 feet density altitude and 4,100 pounds at 4,000 feet density altitude. Autorotation is a pilot-recovery maneuver performed in the event of engine failure that keeps the main helicopter rotor blades moving so that the aircraft descent can be controlled.

In 1997, Boeing merged with MDHS and acquired the MD600N product line ("MDHS/Boeing"). In 1998, U.S. Border Patrol purchased a number of MD600N model helicopters from MDHS/Boeing, including the accident helicopter.

In 1999, MDHI purchased the MD600N product line from MDHS/Boeing pursuant to an Asset Purchase Agreement ("Purchase Agreement"). In the Purchase Agreement, MDHI assumed the following liability from MDHS/Boeing:

> Liability for personal injury, death or property damage, whether arising in contract or in tort (including negligence) arising from or relating to all MD500/600N Products delivered by [MDHS/Boeing] prior to [January 18, 1999] for causes of actions based on notices to customers, such as contained in maintenance manuals, service notices, etc., and arising from aircraft incidents occurring after [January 18, 1999].

(ECF No. 76-27 at 15). MDHS/Boeing retained the following liability:

> Liability for personal injury, death or property damage, whether arising in contract or in tort (including negligence) arising from or relating to Products delivered by [MDHS/Boeing] prior to [January 18, 1999], regardless of legal theory asserted and arising from aircraft incidents occurring prior to [January 18, 1999].... [and]
>
> Liability for personal injury, death or property damage, whether arising in contract or in tort (including negligence) arising from or relating to MD500/600N Products delivered by [MDHS/Boeing] prior to [January 18, 1999], regardless of legal theory asserted, except for causes of actions based on notices to customers such as contained in maintenance manuals, service notices, etc., and arising from aircraft incidents occurring after [January 18, 1999] provided always that any dispute as to whether a cause of action is based on a notice to customers or some other cause of action shall be responded in accordance with Article 11.15 "Dispute Resolution; Arbitration."

(ECF No. 76-27 at 16).[1] In this transfer, MDHI became the Type Certificate Holder for the MD600N helicopter model. The Type Certificate "prescribes conditions and limitations under which the [MD600N] meets the airworthiness requirements of the Civil Air Regulations and, where specified, the Federal Aviation Authority Regulations." (ECF No. 81-20 at 2).

In 2000, the U.S. General Accounting Office ("GAO") issued a report that addressed the performance of the MD600N model helicopter during autorotation. The report collected information on U.S. Customs and Border Protection ("CBP") (formerly the U.S. Border Patrol) pilots experiences with the MD600N model helicopter. The GAO interviewed dozens of CBP personnel, including 25 of the 29 pilots then certified to fly the MD600N, and three of the four training pilots. "Several" of the interviewed pilots stated that "the manner in which the MD600N handles could make successful autorotations more difficult, in part, because it descends faster than other helicopters... [B]ecause it is heavier and has a higher descent rate, there is little room for error at the bottom of the descent." (GAO report; ECF No. 76-7 at 22). The GAO report stated:

> Responding to our inquiry regarding these concerns, the current manufacturer of the MD 600N, MD Helicopters Incorporated (MDH), stated that all known problems with parts or components have been or will be corrected.... MDH has proposed modifications to the helicopter to make it easier and less fatiguing to fly. A major handling improvement being considered—the addition of a stabilization system—may greatly improve handling concerns....
>
> Pilots in all four sectors with the MD 600N reported a lack of confidence in the MD 600N because of flight safety and performance concerns. These concerns included a perceived lack of ability to successfully recover from an engine failure when flying at lower altitudes and speeds (autorotation characteristics)... and poor flight-handling characteristics. Several pilots outside of the Border Patrol also have had some of these concerns. MDH[I] officials stated that the autorotation characteristics of the MD 600N were approved by the FAA and that the problems with aircraft components either had been or would soon be addressed...
>
> An MDH official said they took a test pilot to one sector to discuss the autorotation concerns with Border Patrol pilots and provided additional autorotation training to all Border Patrol sectors with MD 600Ns, at company

---

[1] Plaintiff submits a July 2001 Novation Agreement between MDHS/Boeing, MDHI, and the U.S. Government under which MDHI "assumed all obligations and liabilities of [MDHS/Boeing] regarding ... MD600N... series product lines under the contracts by virtue of the above transfer [in the 1999 Purchase Agreement].... [MDHI] also assumes all obligations and liabilities of, and all claims against, [MDHS/Boeing] under the contracts as if [MDHI] were the original party to the contracts." The Novation Agreement does not apply to the 1999 Purchase Agreement and does not alter the retained and assumed liabilities between MDHS/Boeing and MDHI in the Purchase Agreement.

> expense.... MDH officials also said they were testing a 1 to 2 degree change in the angle of the rotor blades that will make the MD 600N easier to handle during autorotations. If testing goes well, the change will be made at no cost to customers, according to MDH officials.

*Id.* at 5, 19, 21-22.

In 2002, MDHI contracted with CBP to provide recurrent ground school and flight training in the MD600N model aircraft to CBP pilots. Plaintiff Younan received touchdown autorotation training in at least three different helicopter models during his CBP career: the OH-6, the MD500E, and the MD600N. Plaintiff Younan received MD600N flight training, in an F4 model helicopter, in May and December of 2008. Plaintiff Younan was qualified as a flight instructor in the model MD600N and attended regular training to remain qualified in that aircraft.

Plaintiff Younan's supervisor at CBP testified to "pilot complaints [before February 2009]... that it was more difficult to perform a... full touchdown autorotation in an MD600N compared to the other helicopters we fly." (Micallef Depo. 54:16-25; ECF No. 76-17 at 3).

On the night of February 19, 2009, Plaintiffs Dalour Younan and Chad Hessenflow were flying the model MD600N accident helicopter near San Clemente, California, as pilots for CBP. The helicopter engine failed, and Plaintiff Younan performed an emergency touchdown autorotation, landing the helicopter in shallow water on the beach. Plaintiffs Younan and Hessenflow sustained injuries as a result of the emergency landing.

At the time of engine failure, the accident helicopter was flying at 3,834 pounds gross weight and 1,500 feet density altitude, within FAA-approved limitations for handling quality and autorotation performance. Subsequent investigations concluded that the probable cause of the accident was failure of the engine's No. 2 bearing, resulting in a loss of engine power.

In describing his response to the engine failure, Plaintiff Younan stated: "I was focusing on what I had to do and I did things reflexively. It just came naturally.... It was great. It was textbook. We hit the ground. We did not move an inch. We did not slip or slide. We landed in one spot.... I did everything instinctively.... It all happened at the same time.... experience, training, all that came together, years of experience, all the training I've had all came together...." (Younan Depo., ECF No. 76-19 at 9). In describing the February 19, 2009

autorotation landing, Plaintiff Hessenflow stated: "It was within normal limits of the normal autorotation I practiced before. It was a textbook autorotation, to be honest." (Hessenflow Depo., ECF No. 76-16 at 4).

Plaintiff Younan wrote a memorandum on March 11, 2009 regarding the February 19, 2009 incident. In the memorandum, Plaintiff Younan stated:

> [N]either I nor any other pilot in my office has ever been trained in touchdown autorotations in any aircraft similar to our fleet configuration... There is nothing in the MD600N training program that prepared me for what I experienced in [the accident helicopter] on the day of the incident.... all flight characteristics were vastly different from vendor aircraft performance.

(ECF No. 76-21 at 3). Plaintiffs submit the declaration of Plaintiff Younan who states:

> 12. MDHI had a contract to train CBP pilots in emergency procedures including straight-in and 180 touchdown autorotations.... After my crash, I strongly felt that and what I learned in the F4 [training helicopter] was nothing like what I experienced in the MD600N during my crash....
>
> 15. From my experience, F4 handing qualities, performance, and autorotational characteristics are vastly different from an MD600N. F4 has light handling qualities and performance similar to an MD500. MD600N has stiffer controls characteristics and poor performance, especially during autorotations....
>
> 17. The failure of MDHI to properly train me in the difference between a true emergency autorotation at an operational weight of a CBP aircraft (3900 lbs) and their "variant" trainer - the F4 - at 3100 pounds, combined with the very poor autorotation recovery capacity of the 600N were the reasons our crash landing destroyed the aircraft and caused the injuries to the flight crew....
>
> 21. In neither of my training sessions, flight training, or ground school was I informed of the poor autorotational history of the 600N....
>
> 22. I was never told of the very small margin of error in autorotations at operational weights....
>
> 24. The difficulties of auto rotations in the 600N or proper autorotational technique at the operational weight were not addressed at all in the flight training, the ground school, the flight manual or the training materials....
>
> 30. If I had been properly educated on the unique flight characteristics of the 600N at the operational weights that the CBP typically flew, or if the aircraft would have had the power necessary to arrest its high rate of descent, I believe I would have had an opportunity to prevent damage to the aircraft and the injuries to the crew on the night of the accident.

(Younan Decl., ECF No. 81-28 at 3-6).

Plaintiffs submit the declaration of William Lawrence, former test pilot, who states that MDHI's training did not provide essential information regarding the dangers of conducting

autorotations at the operating weight commonly flown by CBP pilots. Lawrence states that such training should have included precise warnings addressing possible approaches to autorotations at high gross weight in the MD600N model helicopter. (Lawrence Decl., ECF No 81-26). Plaintiffs submit the declaration of Donald Sommers, aviation accident reconstructionist, who states that training in aircraft of lower operational weight would not prepare a pilot for operation at higher weights and that prudent instructors would advise extreme care in executing such maneuvers. (Sommers Decl., ECF No. 81-27 at 6-8).

MDHI provides testimony from Channing Moore, who states:

> MDHI had no duty to conduct autorotation training in conditions approximating those of the accident flight [at or near the MD600N's maximum gross weight].... It would be impossible to provide emergency procedures training that simulates all circumstances and flight scenarios that one could encounter in helicopter aviation.... the standard of care among flight schools and instructors does not include conducting autorotation training in such scenarios. Instead, the standard is to provide essential information and basic emergency procedures training, which pilots may then apply to the circumstances they encounter.

(Moore Decl., ECF No. 76-29 at 5). Moore states that "MDHI's autorotation training provided to Plaintiff Younan satisfied the industry autorotation training standard." *Id*. at 8.

**C.   Standard of Review for Summary Judgment**

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. *See Celotex*, 477 U.S. at 322, 324. To avoid summary

judgment, the opposing party cannot rest solely on conclusory allegations of fact or law. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, the nonmovant must designate which specific facts show that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in their favor. *See id.*

## DISCUSSION

**A.     Negligence Claims**

   **I.     Inadequate Training**

MDHI contends that the training provided by MDHI to CBP pilots was consistent with the industry standard for helicopter flight training. MDHI contends that the expert testimony offered by Plaintiffs to establish the standard of care is inadmissible and that Plaintiffs have failed to establish the standard of care for helicopter training.          Plaintiffs contend that MDHI failed to adequately train Plaintiff Younan in autorotations of the nature encountered by Plaintiffs on February 19, 2009 and that, with adequate training, Plaintiff Younan could have landed the accident helicopter without injury. Plaintiffs' experts contend that MDHI failed to provide adequate information in training CBP pilots and that MDHI should have provided more training in aircrafts similar to those operated by CBP.

Professional negligence standards apply to claims requiring knowledge and skill outside common knowledge. *See Scott v. Rayhrer,* 185 Cal.App.4th 1535, 1542 (2010); *Flowers v. Torrance Memorial Hosp. Med. Ctr.*, 8 Cal.4th 992, 1001 (1994). In such cases, expert testimony would be required to establish the applicable standard of care in the relevant community. *United States Fid. & Guar. Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1138 (9th Cir. 2011) (applying California law). "As a general rule, the testimony of an expert witness is required in every professional negligence case to establish the applicable standard of care, whether that standard was met or breached by the defendant, and whether any negligence by the defendant caused the plaintiff's damages." *Scott,* 185 Cal.App.4th at 1542, citing *Flowers*, 8 Cal.4th at 1001. Standards governing helicopter flight training is not a matter of common knowledge and professional negligence analysis is necessary to determine the appropriate

standards of care for parties such as MDHI who provide helicopter pilot training.

The elements of a cause of action for professional negligence are "(1) the existence of the duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) breach of that duty; (3) a causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional negligence." *Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011) *citing Shopoff & Cavallo LLP v. Hyon,* 167 Cal.App.4th 1489, 1509 (2008).

MDHI provided flight training to CBP pilots for the MD600N model aircraft. Plaintiff Younan received such training from MDHI on two occasions in 2008. After the accident, Plaintiff Younan stated that he had "[n]ever been trained in touchdown autorotations in any aircraft similar to our fleet configuration... There is nothing in the MD600N training program that prepared me for what I experienced... on the day of the incident...." (ECF No. 76-21 at 3). Plaintiffs submit the declarations of a military test pilot and an aviation accident reconstructionist who state that MDHI provided inadequate training to CBP pilots for operating the MD600N model helicopter at variable weights.

The Court finds that Plaintiffs have come forward with evidence of a genuine dispute as to the standard of care required by MDHI in providing helicopter training to CBP pilots and the adequacy of the training provided by MDHI.[2]

## II. Failure to Warn

MDHI contends that MDHS/Boeing was responsible for issuing any necessary warnings during the certification testing and approval process with the FAA that occurred prior to MDHI's purchase of the MD600N product line. MDHI contends that all liability for causes of action concerning airframe characteristics of the MD600N model helicopter rests with MDHS/Boeing, because MDHS/Boeing was responsible for the design, manufacture, testing, and certification of the helicopter.

---

[2] MDHI has made objections to Plaintiffs' proffered experts under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993), contending that the experts are unqualified in the areas for which they testify and that their testimony is inadmissible. The Court finds that Plaintiffs have come forward with evidence of a genuine dispute as to standard of care and causation, without prejudice to an objection on *Daubert* grounds at the motions in limine hearing.

Plaintiffs allege that MDHI failed to report or warn Plaintiffs, CBP, and the FAA of problems with the autorotation capabilities of the MD600N product line. Plaintiffs contend that MDHI had ongoing obligations to issue such reports and warnings because MDHI held the Type Certificate for the accident helicopter. Plaintiffs allege that MDHI "violated state law, industry standards, and minimum federal regulations" in failing to maintain continued airworthiness standards of the MD600N model helicopter.

"Negligence law in a failure-to-warn case requires a plaintiff to prove that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about." *Anderson v. Owens-Corning Fiberglas Corp.,* 53 Cal.3d 987, 1002 (1991). "[T]he reasonableness of the defendant's failure to warn" is material. *Id.* California Evidence Code section 669 creates a presumption of negligence where a defendant "(1) ... violated a statute, ordinance, or regulation of a public entity; (2) [t]he violation proximately caused death or injury to person or property; (3) [t]he death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and (4) [t]he person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." Cal. Evid. Code § 669.[3]

MDHI assumed liability from MDHS/Boeing "for causes of actions based on notices to customers, such as contained in maintenance manuals, service notices, etc., and arising from aircraft incidents occurring after the Closing Date [of the Purchase Agreement]." (ECF No. 76-27 at 15). Plaintiffs claim for negligent failure to warn regarding autorotational performance characteristics of the MD600N model helicopter falls within the causes of action for which MDHI has assumed liability from MDHS/Boeing in the 1999 asset transfer.

The Court finds that Plaintiffs have come forward with evidence of a genuine dispute as to whether MDHI was aware of problems with the autorotation performance in the MD600N

---

[3] "[T]he doctrine of negligence per se is not a separate cause of action, but creates an evidentiary presumption that affects the standard of care in a cause of action for negligence." *Millard v. Biosources, Inc.,* 156 Cal.App.4th 1338, 1353, fn. 2 (2007). "The doctrine of negligence per se does not provide a private right of action for violation of a statute." *Johnson v. Honeywell Intern. Inc.*, 179 Cal.App.4th 549, 555-556 (2009) *citing Quiroz v. Seventh Ave. Center,* 140 Cal.App.4th 1256, 1285 (2006).

model helicopter and failed to issue sufficient warnings to Plaintiffs or report the problems to the FAA as required under Federal Regulations.[4] Plaintiffs have come forward with evidence of a genuine dispute as to whether MDHI reasonably should have warned Plaintiffs as to the problems encountered in MD600N model helicopter autorotations.

### 1. Sophisticated User Defense

MDHI contends that Plaintiffs' failure to warn claims are barred by the sophisticated user defense because Plaintiff Younan was a sophisticated user of the MD600N model helicopter who knew or should have known of the specific autorotational characteristics of the helicopter. Plaintiffs contend that Plaintiff Younan cannot be a sophisticated user of the MD600N model helicopter because he was never properly trained to conduct autorotations in the MD600N model helicopters and was not informed of the problems with conducting autorotations in that model helicopter.

The sophisticated user defense applies to negligent warning claims and provides that "[a] manufacturer is not liable to a sophisticated user of its product for failure to warn of a risk, harm, or danger, if the sophisticated user knew or should have known of that risk, harm, or danger." *Johnson v. Am. Standard, Inc.*, 43 Cal. 4th 56, 71 (2008). "[I]f the manufacturer reasonably believes the user will know or should know about a given product's risk, the manufacturer need not warn that user of that risk. [citations omitted]. This is 'especially [true] when the user is a professional who should be aware of the characteristics of the product.'" *Id*. at 66, citing *Strong v. E.I. Du Pont de Nemours Co., Inc.* 667 F.2d 682, 687 (8th Cir. 1981). "Because these sophisticated users are charged with knowing the particular product's dangers, the failure to warn about those dangers is not the legal cause of any harm that product may cause." *Johnson v. Honeywell Intern. Inc.*, 179 Cal.App.4th 549, 554 (2009). "[A] manufacturer is not liable to a sophisticated user for failure to warn, even if the failure to warn is a failure to provide a warning required by statute." *Id*. at 556.

---

[4] Code of Federal Regulation Title 14 Section 21.3 states that "[t]he holder of a type certificate... must report any failure, malfunction, or defect in any product or article manufactured by it that it determines has resulted in.... [a] malfunction, failure, or defect of a propeller control system... [or a] propeller or rotorcraft hub or blade structural failure." 14 CFR § 21.3(a), (c)(4)-(5).

1      Plaintiff Younan was an experienced MD600N model helicopter pilot who received
2 autorotation training for the MD600N model helicopter.  Plaintiff Younan admits that
3 autorotations perform the same in any aircraft.  Plaintiff Younan is a qualified instructor for
4 the MD600N model helicopter with over 1200 hours in the helicopter as pilot-in-command.
5 However, Plaintiff Younan states that he never received information regarding autorotations
6 in the MD600N model helicopter specifically at the operational weights utilized by CBP.
7 Plaintiff Younan states that the training he received by MDHI did not include warnings about
8 emergencies at these operational weights and at certain altitudes.  Plaintiff Younan states that
9 he was not warned of the "poor autorotational history" of the MD600N model helicopter or
10 "the very small margin of error in autorotations at operational weights."  (Younan Decl., ECF
11 No. 81-28 at 3-6).  Plaintiffs have come forward with evidence of a genuine dispute as to
12 whether Plaintiff Younan was a sophisticated user of the MD600N model helicopter.

13 **B.     Strict Liability Claim for Design and/or Manufacture Defects**

14      MDHI contends that it is not liable for defects in the design or manufacture of the
15 accident helicopter because MDHI/Boeing designed and manufactured the accident helicopter,
16 and MDHI/Boeing expressly retained liability for causes of action such as the ones alleged by
17 Plaintiffs.  MDHI contends that it is not successor manufacturer to the MD600N product line
18 and did not assume tort liability from its predecessor, MDHS/Boeing, in the Purchase
19 Agreement.

20      Plaintiffs do not dispute that the accident helicopter was designed, manufactured, sold
21 and supplied by MDHS/Boeing.  Plaintiffs contend that MDHI expressly assumed tort liability
22 from MDHS/Boeing and that MDHI is liable for the alleged defects in the MD600N model
23 helicopter as a successor manufacturer to the MD600N product line.

24      A purchasing corporation such as MDHI, acquiring the assets of another corporation
25 such as MDHS/Boeing, "does not assume the seller's liabilities unless (1) there is an express
26 or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger
27 of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or
28 (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for

1 the seller's debts." *Ray v. Alad Corp.*, 19 Cal.3d 22, 28 (1977); *see also Henkel Corp. v. Hartford Accident and Indemnity Co.*, 29 Cal.4th 934, 941 -942 (2003).  The justification for imposing successor liability is to address the case in which an injured plaintiff has no adequate remedy against the original manufacturer.  *Ray*, 19 Cal. 3d at 25.

MDHI and MDHS/Boeing had an express agreement - the 1999 Asset Purchase Agreement - in which MDHI assumed and MDHS/Boeing retained certain liabilities with regard to the MD600N product line.[5]  MDHI assumed liability, whether under contract or tort law, "for causes of actions based on [1] notices to customers, such as contained in maintenance manuals, service notices, etc., and [2] arising from aircraft incidents occurring after the Closing Date [of the Purchase Agreement]."  (ECF No. 76-27 at 15) (Brackets added).  MDHS/Boeing retained liability for causes of action under contract or tort law, "arising from or relating to MD500/600N Products delivered by [MDHS/Boeing] prior to the Closing Date [of the Purchase Agreement]... regardless of legal theory asserted, except for causes of actions based on [1] notices to customers, such as contained in maintenance manuals, service notices, etc., and [2] arising from aircraft incidents occurring after the Closing Date [of the Purchase Agreement]."  (ECF No. 76-27 at 16) (Brackets added).

Plaintiff's claim for strict liability design and manufacturing defects is not based on "notices to customers, such as contained in maintenance manuals, service notices, etc." Plaintiffs' claim under strict liability is based on the original design and manufacture of the MD600N model helicopter line.  Plaintiffs' claim under strict liability is not one for which MDHI has expressly assumed liability from MDHS/Boeing.  MDHS/Boeing, the original manufacturer and designer of the accident helicopter, expressly retained liability for such claims ("arising from or relating to MD500/600N Products delivered by [MDHS/Boeing] prior to the Closing Date [of the Purchase Agreement]... regardless of legal theory asserted").  MDHI has shown that it is entitled to summary judgment as a matter of law as to Plaintiffs'

---

[5] Plaintiffs do not contend that the transaction between MDHI and MDHS/Boeing amounted to a consolidation or merger of the two corporations, that MDHI was a continuation of MDHS/Boeing, or that the transfer of assets to MDHI under the Purchase Agreement was for the fraudulent purpose of escaping liability for MDHS/Boeing's debts.

cause of action for strict liability.

To the extent that Plaintiffs allege an inadequate training claim under a theory of strict liability, the claim fails because California law does not recognize a strict liability claim for defective training. *Ferrari v. Grand Canyon Dories*, 32 Cal. App. 4th 248, 258 (1995) ("[C]ourts have not extended the doctrine of strict liability to transactions whose primary objective is obtaining services."); *Jimenez v. Superior Court*, 29 Cal. 4th 473, 479 (2002) (it is "established law [] that persons providing only services are not subject to strict products liability").

## CONCLUSION

The Motion for Summary Judgment filed by Defendant MDHI (ECF No. 76) is DENIED as to Plaintiffs' fourth cause of action for negligent training and failure to warn, and GRANTED as to Plaintiffs' fifth cause of action for strict liability.

DATED: June 6, 2012

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge