1
2
3
4
5
6
7
8

9                    **UNITED STATES DISTRICT COURT**

10                    **SOUTHERN DISTRICT OF CALIFORNIA**

11

12   DALOUR YOUNAN, CHAD                    CASE NO. 09cv2136-WQH-
     HESSENFLOW, NANCY RUTH                 BGS
     BELL and VICKI HESSENFLOW,

13
                            Plaintiffs,     ORDER
14        vs.

15   ROLLS-ROYCE CORPORATION , a
     wholly owned subsidiary of Rolls
16   Royce, PLC; and MD
     HELICOPTERS, INC. (MDHI), a
17   foreign corporation,

18                          Defendants.

19   HAYES, Judge:

20        The matters before the Court are two Motions in Limine filed by Plaintiffs (ECF

21   Nos. 161, 162) and eight Motions in Limine filed by the sole remaining Defendant, MD

22   Helicopters, Inc. ("MDHI") (ECF Nos. 163-170).

23   **I.     Background**

24        On November 17, 2010, Plaintiffs filed the Second Amended Complaint, which

25   is the operative pleading.  (ECF No. 33).  The Second Amended Complaint seeks

26   damages for injuries Plaintiffs sustained as a result of a 2009 helicopter accident in San

27   Clemente, California.  Only the Second Amended Complaint's fourth cause of action

28   against MDHI remains to be tried.  The fourth cause of action alleges "negligence,

negligence per se, and failure to warn." *Id*. at 11.  Plaintiffs allege that, as successive manufacturer of the accident helicopter and holder of the accident helicopter's Type Certificate, MDHI was responsible for the safe operation and continued airworthiness of the helicopter, including informing owners, operators, and the Federal Aviation Administration ("FAA") of any design defects and limitations on the performance capabilities of the helicopter.

On February 11, 2013, Plaintiffs filed the following Motions in Limine: (1) Motion to Exclude Evidence of Negligence of Rolls-Royce and Boeing (ECF No. 161), and (2) Motion to Exclude Reference at Trial to Alleged Negligence by and/or Apportionment of Fault to Customs and Border Patrol and Office of Air and Marine (ECF No. 162).  On February 11, 2013, MDHI filed the following Motions in Limine: (1) Motion to Exclude Evidence or Reference to Non-Training-Related Duty to Warn Other than Duty to Comply with 14 C.F.R. §§ 27.1581-27.1589 (ECF No. 163); (2) Motion to Exclude Evidence of or Reference to Other Accidents (ECF No. 164); (3) Motion to Exclude Evidence of or Reference to Expansion of MD600N Flight Envelope (ECF No. 165); (4) Motion to Exclude Evidence of or Reference to Department of Labor's Adjustment After Recovery from a Third Party (ECF No. 166); (5) Motion to Exclude Evidence of or Reference to December 18, 1998 Letter from Tom Crosby to Duncan Hunter (ECF No. 167); (6) Motion to Exclude Reference to MDHI as "McDonnell Douglas" (ECF No. 168); (7) Motion to Exclude Testimony of Donald E. Sommer Regarding Helicopter Flight Training (ECF No. 169); and (8) Motion to Exclude Testimony of William Lawrence Regarding (a) Missing Instructions or Warnings, and (b) Causation (ECF No. 170).

On March 29, 2013 and April 25, 2013, the Court heard oral argument on the Motions in Limine.  (ECF Nos. 195, 200).

## II.    Discussion

### A.    Motion in Limine to Exclude Evidence of Negligence of Rolls-Royce and Boeing

#### 1.    Contentions of the Parties

Plaintiffs "move in limine for an order excluding all evidence, testimony, reference, mention, or argument relating to negligence of Rolls-Royce and Boeing." (ECF No. 171 at 2). Plaintiffs contend:

> This case is only about failure to train and failure to warn of inadequate and dangerous handling qualities and characteristics of the MD600N helicopter in auto-rotation, a condition that occurs only after engine failure and exists solely because engine failure is a foreseeable condition that has already occurred. MDHI cannot establish that the engine failure stipulated to herein was a 'substantial factor' or a proximate cause at all in its failure to adequately train and warn. The causes of engine failures and even the frequency of engine failures are irrelevant to the issue of inadequacy of training in auto-rotation and the inadequacy of warnings associated with the handling qualities of the helicopter while it is being autorotated.

(ECF No. 161 at 2). Plaintiffs contend:

> Any reference at trial to the cause of the engine failure and any attempt to ascribe fault for the engine failure will inject into the trial issues that are irrelevant and will cause undue confusion to the trier of fact. If the proofs are open for MDHI on the cause of the engine failure, proofs should open for Plaintiffs on rebuttal (or in their own case in chief) as to the extent of knowledge that MDHI possessed or should have possessed about the airworthiness and reliability of the engine installed in its MD600N helicopter and its legal obligations as holder of the airworthiness certificate. Certainly if MDHI were allowed to proffer evidence on the reason the engine failed (requiring the initiation of an auto-rotation, the maneuver here at issue) for the purpose of ascribing fault to a non-party, then Plaintiffs should be afforded evidentiary latitude to establish the degree of knowledge of MDHI and its legal obligations as holder of the type certificate to investigate and obtain knowledge of problems associated with the engine, including failings of #2 bearings.

*Id*. at 5-6.

MDHI contends that "the Court should deny Plaintiffs' motion in limine to exclude evidence of Rolls-Royce's negligence and defer its ruling regarding evidence of negligence committed by Boeing." (ECF No. 177 at 7). With respect to the alleged fault of Rolls-Royce, MDHI contends:

> Before the settlement with Rolls-Royce, Plaintiffs and their liability experts repeatedly stated that the failure of the Rolls-Royce engine contributed to the February 19, 2009 accident.... The question is not whether the engine failure contributed to MDHI's alleged negligence; instead, the question is whether the engine failure contributed to the accident, itself.

*Id*. at 3, 5. With respect to the alleged fault of Boeing, MDHI contends that "MDHI remains uncertain about Plaintiffs' claims," and if Plaintiffs argue to the jury that MDHI

had a statutory duty to notify the FAA about issues related to the helicopter, then MDHI "is entitled to explain ... [that] any duty to provide information to the FAA ... belonged to Boeing, not MDHI." *Id*. at 6.

### 2.    Analysis

Under California law, a defendant is liable only for its proportionate share of a plaintiff's noneconomic damages. *See* Cal. Civ. Code § 1431.2(a) ("In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint.  Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault....").  "[A] defendant's liability for noneconomic damages cannot exceed his or her proportionate share of fault as compared with all fault responsible for the plaintiff's injuries, not merely that of defendants present in the lawsuit." *DaFonte v. Up-Right, Inc.*, 2 Cal. 4th 593, 603 (1992) (quotation omitted). "Neither the allocation of fault, nor the amount of a joint and several damage award, varie[s] by virtue of the particular defendants who happen[] to be before the court." *Id*. (quotation omitted).

In its Answer to the Second Amended Complaint, MDHI raised an affirmative defense that "[t]he doctrine of comparative fault and the Fair Responsibility Act of 1986, codified at California Civil Code Section 1431.1 et seq., limits any damages governed thereby which are awarded to Plaintiffs and against MDHI to that portion of Plaintiffs' non-economic damages, if any, that are attributable to MDHI's percentage of fault or liability, if any." (ECF No. 36 at 19; *see also id*. at 16, 18 ("Plaintiffs' claims against MDHI are barred completely or must be reduced in proportion to the fault attributable to such other third parties as are found liable"; "Plaintiffs' claims and damages are barred or should be reduced by the comparative or contributory negligence or responsibility of Plaintiffs and other persons or entities.")).  MDHI may present evidence relevant to the potential fault of Boeing and/or Rolls-Royce, assuming the

evidence is otherwise admissible.  *See DaFonte*, 2 Cal. 4th at 603.  To the extent Plaintiffs wish to introduce evidence of the "knowledge of MDHI and its legal obligations as holder of the type certificate to investigate and obtain knowledge of problems associated with the engine" (ECF No. 161 at 6), Plaintiffs may move for the admission of such evidence at trial, and the Court will rule at that time on the admissibility of that evidence.  To the extent Plaintiffs contend that "evidence of Rolls-Royce's negligence is duplicative and redundant" (ECF No. 188 at 6), Plaintiffs may raise that objection at trial.  The Motion in Limine to Exclude Evidence of Negligence of Rolls-Royce and Boeing is denied without prejudice to object to any specific evidence at trial.

### B. Motion in Limine to Exclude Reference at Trial to Alleged Negligence by and/or Apportionment of Fault to Customs and Border Patrol and Office of Air and Marine

#### 1. Contentions of the Parties

Plaintiffs "move in limine for an order excluding all evidence, testimony, reference, mention, or argument relating to the alleged negligence by and/or apportionment of fault to Customs and Border Patrol ('CBP') and Office of Air and Marine ('OAM')."  (ECF No. 172 at 2).  Plaintiffs contend:

> [T]hroughout the course of the final flight and throughout the crash sequence itself, the helicopter was at all times indisputably within the operating envelope prescribed and published by Defendant, MDHI.... If the helicopter was operated within its certificated and manufacturer's approved flight envelope, there is no legal or factual basis to ascribe fault to CBP/OAM, the owner of the helicopter and employer of Plaintiffs.

(ECF No. 162 at 2).  Plaintiffs also move for the exclusion of the testimony of Merton Cox, CBP Executive Director of Training, and a post-crash email written by Cox on the basis that "Cox expresses expert opinions in his email he is not qualified to give" because he is not an expert and his opinions lack a proper foundation.  *Id*. at 5.

MDHI contends that the "negligence of a nonparty is relevant to show that a defendant should be relieved of liability or that fault should be apportioned according to each tortfeasor's share of responsibility," and "CBP's conduct contributed to Plaintiffs' accident in numerous ways."  (ECF No. 178 at 5).  MDHI contends that

Cox's opinions are admissible because they relate to the standards that CBP requires for the training of its pilots, and "the opinions are based on the knowledge he has obtained from performing his day-to-day responsibilities as CBP's Executive Director of Training, Safety, and Standards, and as the former Director of CBP's National Air Training Center." *Id*. at 5-6.  MDHI requests that the Court deny Plaintiffs' Motion in Limine, or alternatively, "MDHI requests that the Court defer its ruling until it can be determined at trial whether evidence of CBP's negligence and Cox's testimony are relevant to the issues presented by Plaintiffs to the jury." *Id*. at 21.

In reply, Plaintiffs state:

> Admittedly, the Court's ruling on whether the CBP was a substantial factor in this crash, accident, or Plaintiffs' injuries may have to await evidentiary rulings on testimony at trial.  However, Plaintiffs would ask for a cautionary instruction as to any reference to testimony, which is merely speculative, or otherwise inadmissible.

(ECF No. 189 at 10).

### 2.    Analysis

California law "limits a defendant's share of noneconomic damages to his or her own proportionate share of comparative fault." *DaFonte*, 2 Cal. 4th at 604 (citing Cal. Civ. Code § 1431.2).  "The statute states or implies no exception for third party suits by injured employees." *Id*.  The Court finds that MDHI is entitled to present evidence of negligence by the CPB and/or the OAM to the extent that evidence is relevant to the accident/injuries at issue and is otherwise admissible.

Lay opinion testimony by Merton Cox is permissible to the extent MDHI establishes a proper foundation pursuant to Federal Rule of Evidence 701 and the testimony is otherwise admissible.  *See* Fed. R. Evid. 701 ("If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.").

The Motion in Limine to Exclude Reference at Trial to Alleged Negligence by

and/or Apportionment of Fault to Customs and Border Patrol and Office of Air and Marine is denied without prejudice to object to any specific evidence at trial.

**C.    Motion in Limine to Exclude Evidence or Reference to Non-Training-Related Duty to Warn Other than Duty to Comply with 14 C.F.R. §§ 27.1581-27.1589**

### 1.    Contentions of the Parties

MDHI "move[s] in limine for an order excluding all evidence, testimony, reference, mention, or argument relating to a duty to warn."  (ECF No. 163 at 2). MDHI contends that, with respect to Plaintiffs' claim for negligent failure to warn,[1] the Federal Aviation Act regulations preempt any state law standard of care pertaining to the warnings MDHI had a duty to provide regarding the autorotation characteristics of the helicopter at issue.  MDHI contends that the only sources of a duty to warn in this case are 14 C.F.R. § 27.1541(a), which regulates "markings and placards," and 14 C.F.R. §§ 27.1581-27.1589, which regulates the Rotorcraft Flight Manual.  MDHI contends that, generally, 14 C.F.R. § 21.3 imposed no duty on MDHI to warn the FAA of the MD600N's autorotation characteristics at high gross weights.  MDHI contends that, specifically, 14 C.F.R. § 21.3 imposed no duty on MDHI to warn or notify the FAA of the six other MD600N accidents that occurred before the accident at issue in this case.

Plaintiffs contend that in the summary judgment Order, "[t]his Court found that MDHI as Type Certificate Holder clearly had a duty to warn which was not just limited to the Rotorcraft Flight Manual."  (ECF No. 176 at 5).  Plaintiffs contend that many

---

[1]  For the purposes of this discussion, references to Plaintiffs' claim for failure to warn refer exclusively to Plaintiffs' claim for failure to warn outside of the context of MDHI's training of Plaintiff Younan. *See, e.g.,* MDHI Reply Br. at 3, ECF No. 187 ("Preemption applies only in areas regulated by the [Federal Air Regulations].  The [Federal Air Regulations] do not regulate the training provided by MDHI to Younan.  Accordingly, preemption does not apply to the negligent training claim.").

MDHI's motion in limine did not address any purported contractual duties, and the Court makes no ruling as to any purported contractual duties.  *Cf.* Revised Pretrial Order at 4, ECF No. 160 ("The following issues of law ... remain to be litigated upon the trial: .... Whether Plaintiffs may assert against MDHI a claim based on liability that MDHI allegedly assumed from Boeing/MDHS in the January 18, 1999 Asset Purchase Agreement....  Whether Plaintiffs may assert against MDHI a claim based on duties arising in contract.").

federal regulations imposed a duty on MDHI to warn the FAA and the public regarding the "known defect in the MD-600N helicopter's ability to autorotate at high gross weights within the certified flight envelope." *Id.* at 10; *see also id.* at 10-14 (addressing 14 C.F.R. §§ 21.3, 21.99(b), 27.33, 27.71, 27.141, 27.143, 27.601(a), 27.1541(a), 27.1581-27.1589).  Plaintiffs contend that MDHI's failure to challenge Plaintiffs' negligent training claims supports denial of MDHI's preemption arguments related to the non-training failure to warn.  Plaintiffs request an award of fees and costs for responding to the Motion in Limine.

## 2.   Analysis

### a.   State Law Duty to Warn

"The existence and scope of a duty are questions of law for the court's determination...." *Ericson v. Fed. Exp. Corp.*, 162 Cal. App. 4th 1291, 1300 (2008) (citation omitted); *see also In re Air Crash Disaster Near Cerritos, Cal.*, 973 F.2d 1490, 1496-97 (9th Cir. 1992) ("Whether a defendant owes a duty of care is a question of law.") (applying California law).  MDHI moves for a ruling that federal law preempts any state-law duty to warn in this case.

"It is well-established that Congress has the power to preempt state law.... Congress' intent may be explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Montalvo v. Spirit Airlines*, 508 F.3d 464, 470 (9th Cir. 2007).  In *Montalvo*, the Court of Appeals for the Ninth Circuit held that any state-imposed duty to warn airline passengers about risks of deep vein thrombosis was impliedly preempted by the Federal Aviation Act and its corresponding regulations. *See id.* at 471 ("[T]he regulations enacted by the Federal Aviation Administration, read in conjunction with the [Federal Aviation Act] itself, sufficiently demonstrate an intent to occupy exclusively the entire field of aviation safety and carry out Congress' intent to preempt all state law in this field.").  The *Montalvo* court pointed to specific and comprehensive regulations governing the warnings and instructions given to airline passengers, thus demonstrating that Congress and the FAA left no room for states to

deviate from or supplement these warning requirements.  *See id.* at 472-73; *see also Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1007 (9th Cir. 2013) ("The [federal Air Carrier Access Act] regulations are pervasive as to when and where air carriers must provide ... assistance [in moving through an airport]....  Gilstrap's negligence and breach-of-duty-of-a-common-carrier claims challenge United's failure to provide her with assistance ... in traversing the air terminal before, between, and after flights.  The [Air Carrier Access Act] and its implementing regulations establish the standard of care—or duty—that United owed to Gilstrap regarding that activity, and so preempt any different or higher standard of care that may exist under California tort law.").

In *Martin v. Midwest Express Holdings, Inc.*, 555 F.3d 806 (9th Cir. 2009), the plaintiff alleged that an airplane's "stairs were defectively designed because they had only one handrail."  *Id*. at 808.  The Court of Appeals for the Ninth Circuit held that this area was not pervasively regulated because the sole stair regulation promulgated by the FAA "is that [stairs] can't be designed in a way that might block the emergency exits," and the regulations are silent on all other stair safety issues.  *Id*. at 812.  Therefore, federal law did not establish the standard of care applicable to the plaintiff's stairway design defect claim.  *See id*.  The *Martin* court stated that *Montalvo* "means that when the agency issues pervasive regulations in an area, like passenger warnings, the [Federal Aviation Act] preempts all state law claims in that area.  In areas without pervasive regulations or other grounds for preemption, the state standard of care remains applicable."  *Id*. at 811; *see also Gilstrap*, 709 F.3d at 1008 (holding that federal regulations, which "say nothing about *how* airline agents should interact with passengers," do not preempt state law claims for intentional and negligent infliction of emotional distress related to allegations that "that United agents were repeatedly hostile to her").

In this case, Plaintiffs allege that MDHI, as the Type Certificate holder, had a duty to warn the FAA and MD600N owners and operators regarding the MD600N helicopter's inability to autorotate safely at high gross weights.  There are numerous

Federal Aviation Regulations governing the information that a Type Certificate holder must provide to the FAA and owners and operators.  With respect to warnings to the FAA, 14 C.F.R. § 21.3 provides that a Type Certificate holder must report to the FAA "any failure, malfunction, or defect in any product or article manufactured by it that it determines has resulted in any of the occurrences listed in [14 C.F.R. § 21.3(c)]."  14 C.F.R. § 21.3(a).  A Type Certificate holder must report to the FAA "any defect in any product or article manufactured by it that has left its quality system and that it determines could result in any of the occurrences listed in [14 C.F.R. § 21.3(c)]."  14 C.F.R. § 21.3(b).  Section § 21.3(c) lists 13 specific occurrences the Type Certificate holder must report.  *See* 14 C.F.R. § 21.3(c).  With respect to warnings to owners and operators, the Federal Aviation Regulations require that an FAA-approved Rotorcraft Flight Manual ("RFM") be provided with each rotorcraft, containing detailed information necessary for the safe operation of the aircraft.  *See* 14 C.F.R. §§ 27.1581-27.1589; *see also* 14 C.F.R. § 21.5.  With respect to warnings to owners and operators, the Federal Aviation Regulations also require that a Type Certificate holder "furnish at least one set of complete Instructions for Continued Airworthiness to the owner of each type aircraft ... upon its delivery...."  14 C.F.R. § 21.50(b).   These instructions must be made "available to any other person required by this chapter to comply with any of the terms of those instructions."  *Id*.  The format and content of the instructions are dictated by regulations.  *See* 14 C.F.R. § 27.1529; 14 C.F.R. Pt. 27, App. A.  The Federal Aviation Regulations specify "markings and placards" which must be placed in a rotorcraft.  14 C.F.R. § 27.1541(a)(1); *see also* 14 C.F.R. §§ 27.1545-27.1565.  The Federal Aviation Regulations provide that the rotorcraft must contain "[a]ny additional information, instrument markings, and placards required for the safe operation of rotorcraft with unusual design, operating or handling characteristics."  14 C.F.R. § 27.1541(a)(2).

The Court finds that the regulations enacted by the FAA, read in conjunction with the Federal Aviation Act, pervade every aspect of a Type Certificate holder's duty to

provide warnings to the FAA and aircraft owners and operators.  Because a federal "agency [has] issue[d] pervasive regulations in [the] area [of the duty to warn the FAA and owners and operators] ..., the [Federal Aviation Act] preempts all state law claims in that area."  *Martin*, 555 F.3d at 811; *see also Montalvo*, 508 F.3d at 473-74.  Based upon implied field preemption, federal law exclusively establishes the standards of care applicable to Plaintiffs' failure to warn claim against MDHI.[2]  The motion in limine to preclude Plaintiffs from arguing that MDHI had a duty to warn arising under state common law is granted.[3]

### b.     Federal Law Duty to Warn

MDHI concedes that Plaintiffs may argue and introduce evidence related to MDHI's duty to warn owners and operators pursuant to 14 C.F.R. § 27.1541(a) (discussing "markings and placards"), and § 27.1581-27.1589 (discussing the Rotorcraft Flight Manual).  *See* ECF No. 187 at 4 n.2.  MDHI contends that Plaintiffs should be precluding from arguing that it had a duty to warn under 14 C.F.R. § 21.3.

Plaintiffs allege that MDHI had a duty to warn pursuant to § 21.3(a), which provides that "[t]he holder of a type certificate ... must report any failure, malfunction, or defect in any product or article manufactured by it that it determines has resulted in

---

[2]  "[T]he scope of field preemption extends only to the standard of care." *Gilstrap*, 709 F.3d at 1006.  California law "still governs the other negligence elements (breach, causation, and damages), as well as the choice and availability of remedies." *Id.* (quotation omitted).

[3]  In their briefing, Plaintiffs refer to a duty to "remedy airworthiness problems with the MD-600N product line" (ECF No. 176 at 14), and/or to "recall/retrofit" the aircraft (*id.* at 15).  Plaintiffs have failed to show that such a duty is encompassed within the issues remaining to be tried.  *See* Revised Pretrial Order at 2, ECF No. 160 ("The following issues of fact, and no others, remain to be litigated upon the trial: ... [w]ith respect to MDHI's alleged negligence, Plaintiffs' position is that only the following issues of fact remain: the liability of Defendant MDHI, if any, as to Plaintiffs' claim of negligent training and negligent failures to warn, including a negligence per se instruction pursuant to 14 C.F.R. §21.3, 21.5, and 21.7 *et seq.*").  Even if this alleged duty was among the issues remaining to be tried, Plaintiffs have not come forward with facts or law to support such a claim.

1   any of the occurrences listed in paragraph (c) of this section."[4]  14 C.F.R. § 21.3(a).

2   Section 21.3(c) provides a detailed list of "failure[s], defect[s], and malfunction[s]" that

3   a type certificate holder must report pursuant to, *inter alia*, § 21.3(a).  14 C.F.R. §

4   21.3(c).  The reporting requirements of 14 C.F.R. § 21.3(a) do not apply to failures,

5   malfunctions, or defects that the type certificate holder determines "[w]ere reported

6   under the accident reporting provisions of 49 CFR part 830 of the regulations of the

7   National Transportation Safety Board ['NTSB']."  14 C.F.R. § 21.3(d)(1).  Part 830

8   provides rules for the "reporting of aircraft incident and accidents and certain other

9   occurrences." 49 C.F.R. § 830.1(a).  Pursuant to 49 C.F.R. § 830.15, which governs the

10   "[r]eports and statements to be filed," the operator of a civil aircraft must file an NTSB

11   Form 6120.1 within ten days after an accident.  49 C.F.R. § 830.15(a); *see also* Hobby

12   Decl. ¶¶ 5-6, Ex. A at 6, ECF Nos. 197-2 at 2, 197-3 at 2.

13        MDHI has submitted uncontroverted evidence that, for each of the six other

14   accidents that occurred prior to Plaintiffs' accident, an NTSB Form 6120.1 was

15   completed and filed with the NTSB.  *See* Hobby Decl. ¶¶ 8-13, Exs. C-G, ECF Nos.

16   197-2 at 2-4, 197-4 to 197-9.  The Court finds that MDHI has demonstrated as a matter

17   of law that, pursuant to 14 C.F.R. § 21.3(d)(iii), MDHI had no duty to report any of the

18   six other accidents prior to Plaintiffs' accident pursuant to 14 C.F.R. § 21.3(a).

19   Accordingly, the motion in limine to preclude Plaintiffs from arguing that MDHI had

20   a duty to warn arising under 14 C.F.R. § 21.3(a) is granted.  Plaintiffs' request for fees

21   and costs incurred in responding to this motion in limine is denied.

22

_____

23        [4] In the first supplemental brief after oral argument, Plaintiffs raised for the first
24   time the application of § 21.3(f). (ECF No. 198 at 13).  Section 21.3(f) provides: "If an
     accident investigation or service difficulty report shows that a product or article
25   manufactured under this part is unsafe because of a manufacturing or design data defect,
     the holder of the production approval for that product or article must, *upon request of*
26   *the FAA*, report to the FAA the results of its investigation and any action taken or
     proposed by the holder of that production approval to correct that defect."  14 C.F.R.
27   § 21.3(f) (emphasis added).  Plaintiffs have produced no evidence that the Federal
     Aviation Administration made a "request" to MDHI.  *Id.*  Accordingly, Plaintiffs have
28   failed to produce any evidence that MDHI had a duty pursuant to § 21.3(f).  The motion
     in limine to preclude Plaintiffs from arguing that MDHI had a duty to warn arising
     under 14 C.F.R. § 21.3(f) is granted.

In the second supplemental brief after oral argument, Plaintiffs raised the application of 14 C.F.R. § 21.3(b).  (ECF No. 203 at 2).  No later than seven (7) days from the date this Order is filed, MDHI may file a supplemental reply brief limited to responding to Plaintiffs' argument concerning the applicability of 14 C.F.R. § 21.3(b).

**D.   Motion in Limine to Exclude Evidence of or Reference to Other Accidents**

**1.   Contentions of the Parties**

MDHI "moves in limine for an order excluding all evidence, testimony, reference, mention, or argument relating to MD600N accidents other than the accident at issue in this case."  (ECF No. 164-1 at 6).  MDHI contends that evidence of seven other MD600N accidents identified by Plaintiffs is irrelevant, more prejudicial than probative, confusing to the jury, and a waste of time because Plaintiffs have failed to "demonstrate (1) a specific defect common to the accident helicopter and the MD600Ns involved in the other accidents, and (2) that the other accidents occurred under circumstances substantially similar to those present in Plaintiffs' accident."  *Id*. at 6-7.

Plaintiffs contend:

The helicopter is required to be safely autorotated to the ground in an engine-out situation within its certificated operating limitations.  The helicopter has problems doing so at its higher gross operating weights, and MDHI, as the current holder of the type certificate, has failed to inform the FAA of this fact and has failed to warn owners and operators, including its own students, of this dangerous condition.  This failure to warn of a known hazard is a proximate cause of this crash and Plaintiffs' injuries....

The issues which make these accidents admissible are knowledge imputed to or known by MDHI of autorotation accidents at high gross weights.... [T]he Plaintiffs have met their burden of establishing 'similarity' for admissibility purposes as to 'notice.'  All of the accidents involved MDHI or its predecessors on the type certificate..., all involved the prototype MD600, the F-4, or its sister prototypes, and all had MDHI personnel (or its expert, Mr. Morse) in the helicopter, at the controls, as pilot-in-command or as lead pilot....

The accidents that Defendant seeks to preclude at trial occurred at high gross weight operations with a simulated engine failure and autorotation.  The accident here at issue involved a high gross weight operation with an engine failure and autorotation.

(ECF No. 179 at 4-5, 8, 10).  Plaintiffs submit the declaration of expert witness Colonel

William S. Lawrence, who served as an aviator with the United States Marine Corps from 1966-1991.  Col. Lawrence stated:

> The seven accidents are substantially similar in critical areas.  They all refer to the MD600N helicopter.  They were all flown by competent pilots. They were all being operated at moderate to high gross weights.  They were all attempting to execute engine-out autorotative landings.  They were all operating in areas where an unobstructed landing would have been possible.  And they were all unsuccessful.  Other factors listed by Defendant are irrelevant.

(ECF No. 179-5 at 6-7).  Plaintiffs also contend that evidence of the other accidents is admissible to show that the accident at issue was not caused by the negligence of Plaintiff Younan and/or the CBP, but instead was caused by the dangerous autorotational characteristics of the MD600N at high gross weight.  Plaintiffs also contend that evidence of the other accidents are relevant for the purpose of impeaching MDHI's witnesses.

## 2.     Analysis

Plaintiffs represent that they intend to introduce evidence of the following seven MD600N accidents other than the accident at issue in this case: (1) accident of November 4, 1996 ("Other Accident No. 1") (Dalton Decl., Ex. B); (2) accident of November 21, 1996 ("Other Accident No. 2") (Dalton Decl., Ex. C); (3) accident of January 18, 1997 ("Other Accident No. 3") (Dalton Decl., Ex. D); (4) accident of January 16, 1998 ("Other Accident No. 4") (Dalton Decl., Ex. E); (5) accident of February 3, 1998 ("Other Accident No. 5") (Dalton Decl., Ex. F); (6) accident of February 12, 2004 ("Other Accident No. 6") (Dalton Decl., Ex. G); and (7) accident of October 12, 2009 ("Other Accident No. 7") (Dalton Decl., Ex. H).

"A 'showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect.'  Minor or immaterial dissimilarity does not prevent admissibility." *White v. Ford Motor Co.*, 312 F.3d 998, 1009 (9th Cir. 2002) (quoting *Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991)).  "The rule rests on the concern that evidence of dissimilar accidents lacks the relevance required for

admissibility under Federal Rules of Evidence 401 and 402." *Cooper*, 945 F.2d at 1105 (citations omitted). "Substantial similarity depends upon the underlying theory of the case. Evidence proffered to illustrate the existence of a dangerous condition necessitates a high degree of similarity because it weighs directly on the ultimate issue to be decided by the jury." *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434, 1440 (10th Cir. 1992). "The requirement of substantial similarity is relaxed, however, when the evidence of other incidents is used to demonstrate notice or awareness of a potential defect. Any differences in the accidents not affecting a finding of substantial similarity go to the weight of the evidence." *Id.*

MDHI contends that the Court should exclude all evidence of other accidents on the basis that Plaintiffs have failed to identify or define the precise defect at issue. MDHI contends that it is insufficient for Plaintiffs "to define the defect in this case as ... 'difficulties experienced by the MD600N during autorotations at higher operational weights.'" (ECF No. 164-1 at 12). MDHI fails to cite a case in which a court has held that other accidents are inadmissible because of a failure to define a defect with sufficient specificity. The case cited by MDHI in support of its position is *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070 (5th Cir. 1986), wherein the court stated: "The 'substantially similar' predicate for the proof of similar accidents is defined, again, by the defect (or, as we have also termed it, the product) at issue." *Id.* at 1083. The court did not discuss how specific a plaintiff must be in defining "the defect" or "the product." The court held that "[t]he trial court improperly excluded both testimony and exhibits that would have tended to provide evidence of similar accidents." *Id.* The appellate court stated:

> For purposes of proving other accidents in order to show defendants' awareness of a dangerous condition, the rule requiring substantial similarity of those accidents to the accident at issue should be relaxed. Other cases involving multi-piece rims that did not seat and that exploded are sufficiently similar for these purposes. Any differences in the circumstances surrounding these occurrences go merely to the weight to be given the evidence.

*Id.* In this case, the Court finds that Plaintiffs have adequately defined the alleged

defect for the purposes of considering substantial similarity.  *See, e.g.*, ECF No. 179 at 4-5 ("The helicopter is required to be safely autorotated to the ground in an engine-out situation within its certificated operating limitations.  The helicopter has problems doing so at its higher gross operating weights, and MDHI, as the current holder of the type certificate, has failed to inform the FAA of this fact and has failed to warn owners and operators, including its own students, of this dangerous condition.").

MDHI has presented reasons why it contends that each of the Other Accidents is dissimilar from the Plaintiffs' accident.  Plaintiffs have responded with an opinion from an expert witness, whose credentials MDHI does not challenge, detailing reasons why the Other Accidents are substantially similar to Plaintiffs' accident.  *See* Lawrence Aff. ¶¶ 9-20, ECF No. 179-5 at 3-7.  The Court finds that Plaintiffs have presented sufficient evidence of substantial similarity to warrant admission of evidence of the first six Other Accidents for the purpose of showing notice of a potential defect in the MD600N helicopter.[5]  *See White*, 312 F.3d at 1009 (holding that the district court did not err in admitting evidence of a prior accident when the testimony was "somewhat ambiguous" as to whether the prior accident was caused by a manufacturing defect or the design defect at issue in the case); *Four Corners Helicopters, Inc.*, 979 F.2d at 1440 ("The requirement of substantial similarity is relaxed ... when the evidence of other incidents is used to demonstrate notice or awareness of a potential defect.").  The Court finds that the danger of unfair prejudice does not substantially outweigh the probative value of the evidence of the first six Other Accidents when offered to show notice.  The differences in the circumstances between these Other Accidents go to the weight to be given the evidence, which may be argued by MDHI.  *See Jackson*, 788 F.2d at 1083 ("Any differences in the circumstances surrounding these occurrences go merely to the weight to be given the evidence.").

Plaintiffs have shown that evidence of each of the Other Accidents is potentially

---

[5]  Other Accident No. 7, which occurred after Plaintiffs' accident, is not admissible to show notice.

admissible for the purpose of refuting MDHI's contention that the accident at issue was at least in part caused by the negligence of Plaintiff Younan and/or the CBP. Plaintiffs have shown that evidence of each of the other accidents is potentially admissible for the purpose of refuting MDHI's contention that the F4 helicopter used to train Plaintiff Younan was similar to the MD600N helicopter which was the helicopter involved in the Other Accidents and the accident at issue. With respect to the Other Accidents piloted by Channing Morse, an expert witness designated to testify by MDHI, Plaintiffs have shown that evidence of each of those Other Accidents is potentially admissible because they are relevant to Morse's credibility. *See Cooper*, 945 F.2d at 1105 ("[E]vidence of dissimilar accidents may be admitted when relevant to the witness's credibility."). To the extent Plaintiffs seek to admit evidence of any of the Other Accidents for any purpose other than notice, Plaintiffs shall first move for the admission of the evidence outside the presence of the jury.

The Motion in Limine to Exclude Evidence of or Reference to Other Accidents is denied without prejudice to object to specific evidence at trial.

### E.  Motion in Limine to Exclude Evidence of or Reference to Expansion of MD600N Flight Envelope

When the FAA originally certificated the aircraft in 1997, the aircraft's weight limitation at 7,000 feet density altitude was 3,650 pounds, and its altitude limitation when weighing 4,100 pounds was 1,700 feet density altitude. (Morse Decl. ¶ 6, ECF No. 165-6 at 3). The objective of the 1998 flight tests was to expand the flight envelope to achieve the following: (a) expansion of the gross weight limit at 7,000 feet density altitude from 3,650 to 3,850 pounds; and (b) expansion of the altitude limitation at 4,100 pounds from 1,700 feet to 4,000 feet density altitude.[6]  *Id*. ¶ 7.  All of the engineering tests relating to the expansion of the flight envelope were conducted by

_____

[6] In aerodynamics, an aircraft's "flight envelope" refers to the capabilities of the aircraft's design and is defined by a matrix of parameters that includes airspeed, density altitude, and load factor (i.e., weight). The flight envelope is, in large part, the set of defined airspeed, density altitude, and weight restrictions within which the aircraft is certificated and permitted by the FAA to operate. (Morse Decl. ¶ 3, ECF No. 165-6 at 2).

1  Boeing in 1998, prior to MDHI purchasing the MD600N product line. *Id*. ¶ 8.

2      A CBP accident investigation determined that, at the time of Plaintiffs' accident,

3  the helicopter's gross weight was 3,834 pounds. (Dalton Decl., Ex. A (CBP Accident

4  Investigation Report) at 12, ECF No. 165-3 at 14).  When Plaintiffs Younan and Chad

5  Hessenflow heard an "explosion" from the helicopter engine and the autorotation began,

6  the aircraft was flying at an altitude of approximately 1,500 feet above sea level; the

7  aircraft landed at sea level.  (Dalton Decl., Ex. B (NTSB Factual Report) at 1, ECF No.

8  165-4 at 3).  The density altitude at Plaintiffs' landing location was approximately -600

9  feet.  (Morse Decl. ¶¶ 9-10, ECF No. 165-6 at 3).

10              **1.      Contentions of the Parties**

11     MDHI contends:

12         Plaintiffs have alleged that MDHI improperly expanded the MD600N's
           'flight envelope,' stating that MDHI 'continued to expand the flight
13         envelope to alter the helicopter to carry additional weight to meet
           operational and contract requirements knowing that the rotorcraft could
14         not meet the published autorotation parameters.' MDHI expects Plaintiffs
           to offer evidence of the expanded flight envelope in an attempt to show
15         that MDHI behaved improperly and created a dangerous flight condition
           that contributed to Plaintiffs' accident. This evidence should be excluded
16         as irrelevant and unfairly prejudicial.

17  (ECF No. 165-1 at 2 (quoting Second Am. Compl. ¶¶ 51, 63, 68, ECF No. 33)).

18      Plaintiffs contend that "Plaintiffs do not introduce this certification history to

19  show it caused the accident at issue, but rather to show knowledge of an ongoing

20  problem with the autorotational characteristics of the MD600N, which should have

21  prompted MDHI to address this inadequacy either by an aerodynamic change ... or by

22  training and warnings."  (ECF No. 179 at 23).  Plaintiffs contend that "[e]vidence of

23  expansion of the flight envelope goes to the heart of the issue of increasing the gross

24  operating weight and decreasing autorotational capability of the helicopter and the

25  consequent increased danger to the Plaintiffs, which in turn goes to Defendant's failure

26  to warn and instruct."  *Id*. at 29.

27              **2.      Analysis**

28      It is undisputed that Plaintiffs' accident took place within the original flight

envelope, not the expanded flight envelope.  It is undisputed that Boeing—not MDHI—conducted all of the engineering tests relating to the expansion of the flight envelope prior to MDHI's purchase of the MD600N product line in 1999. (Morse Decl. ¶ 8, ECF No. 165-6 at 3).  It is undisputed that MDHI has never attempted to further expand the aircraft's certificated flight envelope, which has remained unchanged since Boeing's 1998 expansion.  (Hobby Decl. ¶¶ 2, 4, ECF No. 165-5 at 2).  Plaintiffs have not shown that evidence of the expansion of the flight envelope is relevant to the issues before the jury.[7]  Even if the evidence of expansion of the flight envelope has some limited probative value, the Court finds that this evidence would cause unfair prejudice to MDHI and waste time.  *See* Fed. R. Evid. 403.  To the extent Plaintiffs contend that evidence of the expansion of the flight envelope is admissible for the purpose of cross-examination of MDHI's witnesses, the Court defers ruling until trial.  The Motion in Limine to Exclude Evidence of or Reference to Expansion of MD600N Flight Envelope is granted without prejudice to Plaintiffs moving for admission of the evidence outside the presence of the jury for a permissible purpose.

**F.    Motion in Limine to Exclude Evidence of or Reference to Department of Labor's Adjustment After Recovery from a Third Party**

### 1.    Contentions of the Parties

MDHI "move[s] in limine for an order excluding all evidence, testimony, reference, mention, or argument relating to Department of Labor's 'Adjustment After Recovery from a Third Party.'"  (ECF No. 166 at 2).  MDHI contends:

> The Department of Labor has what is essentially a lien on any recovery by Plaintiffs at trial.  Evidence of the Lien violates the policy rationale behind the collateral source rule by necessarily introducing evidence of a collateral source of compensation for Plaintiffs' alleged injuries.  Further, such evidence has no probative value and will only mislead the jury.  Evidence of the Lien does not tend to prove or disprove MDHI's liability, nor does it assist the jury to determine Plaintiffs' damages.  Rather, evidence of the Lien will only mislead the jury regarding the proper calculation of Plaintiffs' damages, if any.  The Lien is therefore inadmissible at trial.

---

[7] To the extent certain of the Other Accidents are related to the expansion of the flight envelope, the admissibility of evidence of the Other Accidents is discussed above.

1   (ECF No. 166-1 at 2).

2        Plaintiffs assert:

3        [T]he [Federal Employees' Compensation Act ('FECA')] statutory scheme
         has a provision in its long form calculation, which is unique to FECA and
4        is illogical and unjust in its application.  FECA takes a future credit for the
         totality of any settlement or judgment against future wages and medicals
5        regardless whether the settlement or judgment was identified as medicals,
         lost wages, pain and suffering, permanent disability, or disfigurement.  All
6        compensatory dollars received, after flowing through the form where
         attorney's fees and loss of consortium are deducted, are credited in favor
7        of [Office of Workers' Compensation] against future medicals.

8   (ECF No. 180 at 5).  Plaintiffs assert that "many jurors may have experience with state

9   workers' compensation or private insurance and believe that Plaintiffs will receive

10  benefits whether they win or lose this case.  Such is not the case."  *Id.* at 7.  Plaintiffs

11  contend: "[A]n explanation of the FECA formula is essential to Plaintiffs' damages

12  claim because Plaintiffs can show the disproportionate effects [5 U.S.C.] Section 8132

13  has on Plaintiffs' recovery (as opposed to if these were private sector employees) and

14  excluding evidence of a federal 'payback' and future medical 'surplus' would unjustly

15  enrich MDHI."  *Id.* at 7-8.

16              **2.    Analysis**

17        Under California law, "a person injured by another's tortious conduct is entitled

18  to recover the reasonable value of medical care and services reasonably required and

19  attributable to the tort."  *Hanif v. Housing Auth.*, 200 Cal. App. 3d 635, 640 (1988)

20  (citation omitted).  Plaintiffs have failed to show how the amount of FECA benefits or

21  the amount of a lien on Plaintiffs' recovery provides information relevant to "the

22  reasonable value of medical care and services," or any other issue properly before the

23  jury.  Even if evidence of the benefits had some probative value to a relevant issue,

24  there is a substantial danger that evidence of the benefits received, the lien on those

25  benefits and the Long Form Statement of Recovery would confuse and/or mislead the

26  jury.  Pursuant to Federal Rules of Evidence 401 and 403, the Motion in Limine to

27  Exclude Evidence of or Reference to Department of Labor's Adjustment After

28  Recovery from a Third Party is granted.

### G.   Motion in Limine to Exclude Evidence of or Reference to December 18, 1998 Letter from Tom Crosby to Duncan Hunter

On December 18, 1998, CBP Safety Officer and Pilot Tom Crosby sent a letter to U.S. Representative Duncan Hunter detailing Crosby's concerns about the safety of the MD600N helicopter.  (Dalton Decl., Ex. A ("Crosby letter"), ECF No. 167-3).  The letter is co-signed by five other CBP pilots.  In the letter, Crosby states numerous opinions about the MD600N's design, flight characteristics, and autorotation performance, such as: "[T]he [MD600N's] main rotor system is only marginally adequate for the weight of the aircraft." (Crosby Letter at 1, ECF No. 167-3 at 2). "The MD600N is overweight and oversized for our primary mission, particularly in terms of blade loading."  (Crosby Letter at 3, ECF No. 167-3 at 4).   "The MD600N badly exceeds 2500 feet per minute rate of descent in autorotation at maximum gross weight. Our night time mission weight is estimated to be 15 pounds under maximum gross weight at takeoff....  [T]he estimated rate of descent at the above mentioned mission weight is 2826 feet per minute."  *Id*.

#### 1.   Contentions of the Parties

MDHI "move[s] in limine for an order excluding all evidence, testimony, reference, mention, or argument relating to a December 18, 1998 letter from Tom Crosby to Duncan Hunter."  (ECF No. 167 at 2).  MDHI contends: "The Crosby letter should be excluded from evidence for three separate reasons: (1) it constitutes expert opinions offered by a lay witness and without foundation; (2) it is inadmissible hearsay; and (3) the danger of unfair prejudice would substantially outweigh the letter's probative value."  (ECF No. 167-1 at 2).

Plaintiffs contend that "[t]he motion should be denied because, (1) the letter is not proffered to establish the truth of the matter (facts) asserted therein, but rather as to notice, (2) as submitted, the letter is not expert testimony, and (3) the letter has probative value, especially

as to the defenses presented by MDHI, which substantially outweigh any prejudicial effect."   (ECF No. 179 at 27).  Plaintiffs contend: "It is clear MDHI will argue

comparative and non-party fault of the Plaintiffs (CBP pilots) and the CBP.  If this is true, MDHI should not be permitted to argue what Plaintiffs and CBP knew while at the same time excluding evidence of their complaints about the safety of the helicopter in an engine failure and autorotation."  *Id.* at 28.

In reply, MDHI contends "The letter did not give MDHI notice of defect—it gave MDHI notice of opinions about the aircraft requiring specialized experience, held by a lay person who failed to demonstrate any qualification to offer them or any foundation for them.  Thus, the letter did not provide legitimate notice of a dangerous condition." (ECF No. 185 at 2).  MDHI contends:

> The nature of MDHI's comparative negligence defense will depend on the evidence Plaintiffs present at trial.  It is too early to determine whether the Crosby letter will be relevant to that defense; even if it is relevant, the Rule 403 concerns likely will outweigh any probative value. Furthermore, the argument is unpersuasive because it does not explain how the letter defeats any comparative fault claim that MDHI might have.

*Id.* at 3.

## 2. Analysis

To the extent Plaintiffs intend to offer the Crosby letter for the truth of the matter asserted, the letter constitutes hearsay which is not admissible without Plaintiffs laying a foundation that an exception applies.  Plaintiffs have failed to lay such a foundation. To the extent Plaintiffs intend to offer the Crosby letter for the purpose of showing that MDHI had notice of a defect related to the MD600N helicopter, Plaintiffs have failed to demonstrate that Crosby possessed the necessary qualifications or foundation to competently state the opinions contained in the letter, such that notice could be reasonably inferred.  To the extent Plaintiffs intend to offer the Crosby letter as evidence of CBP's and/or Plaintiffs' complaints in response to MDHI's comparative fault defense, the Court defers ruling until trial.  The Motion in Limine to Exclude Evidence of or Reference to the Crosby Letter is granted without prejudice to Plaintiffs moving for the admission of the Crosby letter outside the presence of the jury for a permissible purpose.

**H.     Motion in Limine to Exclude Reference to MDHI as "McDonnell**

Douglas"

MDHI "move[s] in limine for an order excluding all reference to MDHI as McDonnell Douglas." (ECF No. 168 at 2). MDHI asserts:

> Despite their similar-sounding names, MDHI and [McDonnell Douglas Helicopter Systems ('MDHS')] are independent companies, separate from one another. Each company played a distinct role relative to the MD600N product line. MDHS designed the MD600N, and manufactured, sold, and delivered the accident helicopter to the Border Patrol. On the other hand, MDHI purchased the MD600N product line after the Border Patrol received the accident helicopter and later contracted with CBP to train pilots in the MD600N. These companies are not currently, and never have been, subsidiaries of one another or affiliated with each other in any way.

(ECF No. 168-1 at 3). Plaintiffs respond:

> Recognizing that the defendant in this case is MD Helicopters, Inc. and known as MDHI and not McDonnell Douglas, Plaintiffs essentially concur in the Defendant's motion, subject only to their suggestion that counsel meet and confer to seek agreement on a statement than can be published to the jury explaining the ownership history of the type certificate and manufacture and support of the MD 600N aircraft.

(ECF No. 173 at 2). In reply, MDHI asserts: "MDHI is amenable to Plaintiffs' suggestion that the Court read a statement to the jury summarizing the various connections each company has to the MD600N helicopter, so long as both parties agree on the language of the statement." (ECF No. 181 at 2).

Based upon the agreement of the parties, the Motion in Limine to Exclude Reference to MDHI as "McDonnell Douglas" is denied as moot.

**I.      Motion to Exclude Testimony of Donald E. Sommer Regarding Helicopter Flight Training**

**1.      Contentions of the Parties**

MDHI moves pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), "for an order excluding the testimony of Donald E. Sommer regarding helicopter flight training." (ECF No. 169 at 2). Plaintiffs' expert, Sommer, has offered opinions related to the MD600N pilot training provided by MDHI to Plaintiff Younan. Of the 20 opinions listed in Sommer's expert report, MDHI challenges the following four:

> 4.      Mr. Younan's training from MDHI was deficient in that he was trained by MDHI in autorotations in a different model helicopter,

1     at a lighter gross weight;

2   5. Mr. Younan should have been warned by MDHI that handling
      qualities and characteristics for autorotations in the MD-600N were
3      substantially different than those of the lighter F4 variant; ...

4   7. MDHI knew that CPB was operating its MD-600N at higher
      weights and failed to warn that autorotations at those weights were
5      extremely difficult and might result in a crash; ...

6   9. MDHI should have either discontinued production of the
      MD-600N, lowered the gross weight, trained pilots to safely
7      autorotate at higher weights and warned the pilots of the helicopters
      dangerous handling qualities and characteristics in high gross
8      weight autorotation....

9 (Sommer Report at 20, ECF No. 169-3 at 21).  MDHI challenges the related opinions

10 stated in Sommer's report and deposition.  *See* Sommer Report at 11-13, ECF No. 169-

11 3 at 12-14; Sommer Dep. at 106-115, 117, ECF No. 169-4 at 11-21.

12    MDHI contends that Sommer is not qualified to offer these opinions because

13 "[n]one of Sommer's qualifications relates specifically to helicopter flight training," he

14 has not investigated helicopter accidents where training is directly at issue, and his work

15 consulting on a textbook "does not qualify [him] as an expert in every subject in the

16 book."  (ECF No. 169-1 at 4, 6).  MDHI contends that "Sommer's opinions regarding

17 helicopter flight training should also be excluded as unreliable because they are pure

18 speculation without any factual support."  *Id.* at 7.  MDHI contends:

19   Sommer did not look at other helicopter manufacturer training facility
    training procedures in forming his opinion.  Accordingly, he has no factual
20   basis upon which to form an expert opinion regarding the industry
    standard of care.... [B]ecause he cannot offer a reliable opinion regarding
21   the industry standard of care, he has no basis upon which to form an
    opinion comparing MDHI's training to that standard and expressing what
22   MDHI should have done differently.  Any testimony about helicopter
    flight training would be wholly unreliable.
23

*Id.* at 7-8.
24

25    Plaintiffs contend that MDHI's arguments go to weight and credibility of

26 Sommer's opinions, not their admissibility.  Plaintiffs contend that Sommer is qualified

27 based upon his "combination of qualifications" as an FAA certified flight instructor,

28 an FAA certified commercial helicopter pilot, an FAA certified Airline Transport

Pilot, an engineer and a qualified aircraft accident investigator and reconstructionist.

(ECF No. 174 at 8).  Plaintiffs contend that "Mr. Sommer's opinions—derived from his learned disciplines—together with the record evidence support his opinions of negligent flight training by MDHI, which are based on sound methodology and reliable principles." *Id*. at 11.

## 2.    Analysis

An expert witness may testify at trial if the expert's "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.    A witness must be "qualified as an expert by knowledge, skill, experience, training, or education" and may testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  *Id.*; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 141, 148-49 (1999).  Expert testimony is liberally admitted under the Federal Rules.  *See Daubert*, 509 U.S. at 588 (noting that Rule 702 is part of the "liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony"); *see also* Fed. R. Evid. 702 advisory committee notes to 2000 amendments ("[R]ejection of expert testimony is the exception rather than the rule.").

The "trial judge must ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589.  "Concerning the reliability of non-scientific testimony ..., the *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (citations omitted).  In such cases, the trial court's gatekeeping role under *Daubert* involves probing the expert's knowledge and experience. *See id.* at 1018.  "It is the proponent of the expert who has the burden of proving admissibility." *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).  Admissibility of the expert's proposed testimony must be established by a

preponderance of the evidence.  *See Daubert*, 509 U.S. at 592 n.10 (citation omitted).

After review of the submissions of the parties, the Court finds that Plaintiffs have failed to establish that Sommer had adequate factual support or other foundation to form the opinions challenged by MDHI, *see* Sommer Report at 11-13, 20 (opinions 4, 5, 7, 9), ECF No. 169-3 at 12-14, 21 & Sommer Dep. at 106-115, 117, ECF No. 169-4 at 11-21.  For example, Sommer testified that he has not "looked at other helicopter manufacturer training facility training procedures."  (Sommer Dep. at 121, ECF No. 169-4 at 23).  Plaintiffs have failed to establish that Sommer, whose experience and training is primarily focused on fixed-wing aircraft, possesses the requisite experience necessary to form the challenged opinions.  The Court finds that Plaintiffs have failed to establish that the opinions are sufficiently reliable to be admissible.  *See Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) (expert testimony is "unreliable and inadmissible" when an expert failed to "satisfactorily to explain the reasoning behind his opinions," rendering his opinions "unsubstantiated and subjective"); *see also King v. Cessna Aircraft Co.*, No. 03-20482, 2010 U.S. Dist. LEXIS 50728, at *27-*28 (S.D. Fla. May 18, 2010) ("Plaintiff here has failed to meet the burden of showing how this expert, though experienced, may render a reliable opinion before the jury on this question.  There is no showing in this record, for instance, that Sommer experienced a pilot's control taken over by a charterer or aircraft manager.").  The Motion to Exclude Testimony of Donald E. Sommer Regarding Helicopter Flight Training is granted without prejudice to Plaintiffs proffering a sufficient foundation for Sommer's challenged opinions outside the presence of the jury.

**J.      Motion to Exclude Testimony of William Lawrence Regarding (1) Missing Instructions or Warnings, and (2) Causation**

**1.      Contentions of the Parties**

Plaintiffs' helicopter pilot training expert, Colonel William Lawrence, has opined that MDHI should have provided different instructions or warnings when it trained Plaintiff Younan to fly the MD600N, as well as separate warnings to the CBP.  Col.

Lawrence has also opined that the absence of certain instructions or warnings during Younan's training caused the accident. MDHI contends that Col. Lawrence should be precluded from offering these opinions at trial. MDHI contends: "The first opinion is unreliable and unduly prejudicial because it is based exclusively on irrelevant and inadmissible evidence of other accidents. The second opinion is unreliable because it constitutes pure speculation about what might have happened had Younan received a particular instruction or warning during training." (ECF No. 170-1 at 2).

Plaintiffs contend that Col. Lawrence's opinions are based upon his 20 years of personal experience as a helicopter flight instructor and his review of the Other Accidents involving the MD600N helicopters. Plaintiffs contend that Col. Lawrence's testimony concerning causation is sufficient because he testified that Younan "more likely than not" would have reacted differently on the day of the crash had he received different training. (ECF No. 175 at 12).

### 2. Analysis

To the extent MDHI moves for the exclusion of Col. Lawrence's opinions that are based upon evidence of Other Accidents, the motion is denied because the Court has found that evidence of the Other Accidents are admissible, as discussed above. To the extent MDHI moves for the exclusion of Col. Lawrence's opinion that the absence of certain instructions or warnings during Younan's training caused the accident, the Court finds that MDHI's "recourse is not exclusion of the testimony, but, rather, refutation of it by cross-examination and by the testimony of [his] own expert witnesses." *Humetrix v. Gemplus*, 268 F.3d 910, 919 (9th Cir. 2001). The Motion to Exclude Testimony of William Lawrence Regarding (1) Missing Instructions or Warnings, and (2) Causation is denied without prejudice to renew at trial with respect to specific testimony.

## III. Conclusion

IT IS HEREBY ORDERED that, as discussed above and at the March 29, 2013 and April 25, 2013 hearings:

(A)     The Motion in Limine to Exclude Evidence of Negligence of Rolls-Royce and

Boeing is denied without prejudice to object to any specific evidence at trial. (ECF No. 161).

(B)  The Motion in Limine to Exclude Reference at Trial to Alleged Negligence by and/or Apportionment of Fault to Customs and Border Patrol and Office of Air and Marine is denied without prejudice to object to any specific evidence at trial. (ECF No. 162).

(C)  The motion in limine to preclude Plaintiffs from arguing that MDHI had a duty to warn arising under state common law is granted.[8] (ECF No. 163).  The motion in limine to preclude Plaintiffs from arguing that MDHI had a duty to warn arising under 14 C.F.R. §§ 21.3(a) and/or 21.3(f) is granted.  Plaintiffs' request for attorney's fees incurred in responding to this motion in limine is denied.  No later than seven (7) days from the date this Order is filed, MDHI may file a supplemental reply brief limited to responding to Plaintiffs' argument concerning the applicability of 14 C.F.R. § 21.3(b).

(D)  The Motion in Limine to Exclude Evidence of or Reference to Other Accidents is denied without prejudice to object to specific evidence at trial.  (ECF No. 164).

(E)  The Motion in Limine to Exclude Evidence of or Reference to Expansion of MD600N Flight Envelope is granted without prejudice to Plaintiffs moving for the admission of the evidence outside the presence of the jury for a permissible purpose.  (ECF No. 165).

(F)  The Motion in Limine to Exclude Evidence of or Reference to Department of Labor's Adjustment After Recovery from a Third Party is granted.  (ECF No. 166).

(G)  The Motion in Limine to Exclude Evidence of or Reference to the Crosby Letter is granted without prejudice to Plaintiffs moving for the admission of the Crosby letter outside the presence of the jury for a permissible purpose.  (ECF No. 167).

_____

[8]  As stated above, this ruling does not relate to Plaintiffs' claim of failure to warn in the context of MDHI's training of Plaintiff Younan.

1   (H)   The Motion in Limine to Exclude Reference to MDHI as "McDonnell Douglas"

2         is denied as moot.  (ECF No. 168).

3   (I)   The Motion to Exclude Testimony of Donald E. Sommer Regarding Helicopter

4         Flight Training is granted without prejudice to Plaintiffs proffering a sufficient

5         foundation for Sommer's challenged opinions outside the presence of the jury.

6         (ECF No. 169).

7   (J)   The Motion to Exclude Testimony of William Lawrence Regarding (1) Missing

8         Instructions or Warnings, and (2) Causation is denied without prejudice to renew

9         at trial with respect to specific testimony.  (ECF No. 170).

10  DATED:  May 7, 2013

11

        **WILLIAM Q. HAYES**
12      United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28